UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI WRIGHT,

                                          Case No. 20-cv-11312

           Plaintiff,                  District Judge Robert H. Cleland

                                       Magistrate Judge Anthony P. Patti

       v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20) and AFFIRM THE COMMISSIONER'S DECISION

**I.      RECOMMENDATION**:      For   the   reasons   that   follow,   it   is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment

(ECF No. 17), **GRANT** Defendant's motion for summary judgment

(ECF No. 20), and **AFFIRM** the Commissioner's decision.

## II.        REPORT

Plaintiff, Lori Wright, brings this action under 42 U.S.C. § 405(g) for review

of a final decision by the Commissioner of Social Security ("Commissioner")

denying her application for Disability Insurance Benefits ("DIB").  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-

motion for summary judgment (ECF No. 20), and the administrative record (ECF

No. 13).   Plaintiff timely commenced the instant action on May 26, 2020.  (ECF

No. 1).

### A.    Background and Administrative History

Plaintiff, born April 22, 1968, alleges disability as of June 12, 2012.

(ECF No. 13-5, PageID.206.)  She filed an application for DIB on January 16,

2017. (ECF No. 13-2, PageID.58.)  She alleges disability resulting from

fibromyalgia (ECF No. 13-6, PageID.237.)  Following the initial denial of her

claim on June 23, 2017, Plaintiff requested an administrative hearing, held October

12, 2018 in Oak Park, Michigan.  (ECF No. 13-2, PageID.80.)  Administrative Law

Judge ("ALJ") Virginia Herring presided. (*Id.*)  Plaintiff, represented by counsel,

testified, as did Vocational Expert ("VE") Michael Roscoe (*Id.*, PageID.84, 118.)

On April 4, 2019, ALJ Herring determined that Plaintiff was not disabled within

the meaning of the Social Security Act at any time on or before the December 31,
2017 expiration of entitlement to DIB.  (*Id*., PageID.58-73.)

On March 23, 2020, the Appeals Council denied Plaintiff's request for
review of the administrative findings, making ALJ Herring's findings the final
decision of the Commissioner.  (*Id.*, PageID.44.)

<b>B.        Plaintiff's Medical History</b>

The administrative record contains approximately 960 pages of medical
records, which were available to the ALJ at the time of her April 1, 2021 decision.
(ECF Nos. 13-7-13, PageID.319-1286.)   These materials will be discussed in
detail, as necessary, below.

<b>C.        The Administrative Decision</b>

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation
process, the ALJ found that Plaintiff had not engaged in substantial gainful activity
from the alleged onset of disability date of June 12, 2012 through the date last
insured ("DLI") for DIB of December 31, 2017.  (ECF No. 13-2, PageID.60.)   At
**Step 2**, the ALJ found that through the DLI, Plaintiff had the following severe
impairments: "history of fibromyalgia, lumbar and cervical spine degenerative disc
disease, obesity, left hip bursitis, asthma, anxiety (also diagnosed as unspecified
anxiety disorder) and posttraumatic stress disorder ("PTSD")" (*Id*., PageID.61.)  At
**Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*, PageID.62.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] as exertionally light subject to the following limitations:

> [She] can sit 6 hours in an 8-hour workday, but she can stand and/or walk only 4-hours, can occasionally climb stairs or ramps and must avoid climbing ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. She must avoid environments with extreme temperatures, excessive vibration, dangerous machinery and unprotected heights. The claimant is limited to simple and routine tasks and having only occasional interaction with the public.

(*Id.,* PageID.65.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform her past relevant work as a fast-food manager. (*Id.*, PageID.71.)  At **Step 5**, the ALJ cited the VE's job findings, concluding that Plaintiff could perform the unskilled work of a product processor, assembler, packager, and inspector/sorter. (*Id.*, PageID.72.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 12, 2012 through December 31, 2017. (*Id.*, PageID.72.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

D.          **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff makes three arguments for remand, contending first that the ALJ erred by according only minimal weight to her treating physician's opinion. (ECF No. 17, PageID.1308, 1313) *citing* (ECF No. 13-2, PageID.70.) Second, she argues that the ALJ's rationale for the limitations set forth in the Residual Functional Capacity ("RFC") fails to acknowledge the medical evidence supporting the

disability claim. (*Id*., PageID.1315.)  Third, she argues that her subjective allegations of limitation were improperly discounted.  (*Id*., PageID.1320.)

Because resolution of Plaintiff's argument regarding the subjective allegations is largely dispositive of her argument related to the RFC, her second and third arguments are considered in reverse order.

### 1.   The Treating Physician's Opinion

Plaintiff argues that the ALJ's rejection of treating physician Thomas Graves, M.D.'s August 18, 2018 opinion was inadequately supported and explained. (ECF No. 17, PageID.1308, 1313), *citing* (ECF No. 13-2, PageID.70.)  The Commissioner argues to the contrary, noting that ALJ's finding is supported Dr. Grave's own treating records as well as other portions of the record.  (ECF No. 20, PageID.1346-1347.)  The Commissioner also argues that the ALJ provided "good reasons" for the rejection of the treating opinion as required by 20 C.F.R. § 404.1527(c)(2).  (*Id*., PageID.1347-48.)

### a.  Applicable Law

For the period under consideration, the opinion of a treating physician is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(*citing Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. §

404.1527(c)(2).   In the instance that the treating physician's opinion is accorded less than controlling weight, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) the "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson* at 544.

The ALJ must also provide "good reasons" for according less than controlling weight to a treating opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson*, 378 F.3d at 544–546; § 404.1527(c)(2).   The failure to articulate good reasons for rejecting a treating physician's opinion constitutes reversible error. "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, at 376 (internal citations omitted).

### b.  Dr. Graves' Opinion and the ALJ's Findings

On August 28, 2018, Dr. Graves completed a "Fibromyalgia Residual Functional Capacity Questionnaire" ("Opinion"), noting that he had treated

8

Plaintiff for 15 years, two to seven times each year.  (ECF No. 13-8, PageID.719.) He noted the presence of spondylolysis, other joint problems, and a fibromyalgia diagnosis by rheumatologist Violette Henein, M.D.  (*Id*.)  He stated that his findings were supported by x-rays and MRIs. (*Id*.)  He gave Plaintiff a "fair" prognosis.  (*Id*.) He found that Plaintiff's pain was precipitated by weather changes, stress, fatigue, movement, cold, and the lack of position changes.  (*Id*., PageID.720.)  He found that pain and other symptoms interfered with her concentration "constantly" and that she was incapable of even low stress jobs.  (*Id*.)  He found that she was unable to walk for any distance without severe pain.  (*Id*., PageID.721.)  He declined to estimate how long Plaintiff could sit, stand, or walk at one time, stating that he was "unsure." (*Id*.)   He found that Plaintiff required work allowing her to change position at will, take unscheduled breaks, and keep her legs elevated.  (*Id*.)  He found that she was limited to lifting/carrying less than 10 pounds on a rare basis and experienced manipulative limitations (*Id*., PageID.722.)  He found that Plaintiff would be expected to miss more than four days of work each month.  (*Id*.)

ALJ Herring acknowledged Dr. Graves long treating history, citing his February 2014 records noting Plaintiff's report of cervical spine symptoms. (ECF No. 13-2, PageID.67.)   The ALJ observed, however, that Dr. Graves' treating records also showed a full range of motion, a normal neurological examination, and symptoms of fibromyalgia adequately controlled with medication.  (*Id.*) *citing* (ECF

No. 13-7, PageID.482-483.)   The ALJ cited Dr. Graves' August 2014 treating records (more than two years after the alleged onset of disability) noting the absence of joint pain, swelling, or weakness.  (*Id*.) *citing* (ECF No. 13-7, PageID.480-481.) While Plaintiff reported right shoulder tenderness, the ALJ noted that the record showed a full range of motion and a negative x-ray.  (*Id.*)  The ALJ cited July 2015 records by Randal Colvin, M.D. stating that Plaintiff refused physical therapy because she was preparing to leave for a vacation destination several hours away. (*Id*.) *citing* (ECF No. 13-7, PageID.474.)   The ALJ cited rheumatologist Dr. Violette Henein, M.D.'s October 2015 finding that a fibromyalgia diagnostic examination was "negative for any tender points." (*Id*., PageID.68) *citing* (ECF No. 13-7, PageID.509.)  The ALJ noted Plaintiff's June 2017 report to a medical source that she had camped over the recent holiday weekend.  (*Id.*)  She noted that Plaintiff was injured while taking "a hike in the woods" during a camping trip in August 2018.  (*Id*., PageID.70) *citing* (ECF No. 13-12, PageID.1139, 1176-1177, 1189.)

The ALJ then discussed Dr. Graves' August 28, 2018 opinion.  (*Id.*)  She rejected Dr. Graves' finding that Dr. Henein made a fibromyalgia diagnosis, noting that none of the records showed that Plaintiff met the diagnostic criteria for the condition.   (*Id*.)   The ALJ observed that Dr. Graves' finding of severe concentrational deficiencies and the need to miss four days of work each month was not supported by his own treating records or the rest of the medical transcript.  (*Id*.)

She noted that Dr. Graves' did not provide any explanation for these findings.  (*Id*.)

The ALJ found that Dr. Graves' opinion that Plaintiff was unable to perform high

stress jobs was likewise unsupported by the record, adding that the RFC's limitation

to "simple and routine tasks with little contact with the public" accommodated "any

such limitation." (*Id.*, PageID.65, 70.)  She gave Dr. Graves' findings "minimal

weight" because it was "minimally consistent with the record as a whole." (*Id*.,

PageID.70.)

### c.  The ALJ's Accord of Minimal Weight to the Dr. Grave's Opinion Satisfies the Requirements of § 404.1527(c)(2)

Contrary to Plaintiff's contention, the ALJ's rejection of Dr. Graves' opinion

is well supported and explained.  While Dr. Graves found that the diagnosis of

fibromyalgia contributed to Plaintiff's disability, treating records show "no

fibromyalgia tender points" on multiple occasions.  (ECF No. 13-7, PageID.514,

518, 524, 530, 535, 540; ECF No. 13-8, PageID.683, 690, 695, 700, 705, 709.)

The ALJ also found that the treating records as a whole supported the non-disability

determination.  Aside from the ALJ's citation to the transcript,  the record includes

physical therapy records from 2016 showing that while Plaintiff reported

continuing pain, she skipped sessions for two weeks to go camping and continued

to drive "a lot," and helped her daughter move to college.  (ECF No. 13-7,

PageID.368.)   Treating notes following a February 2018 discectomy show a

significant improvement in the months following surgery, including full strength in

the lower extremities, a normal gait, and the ability to participate in post-surgical camping trips. (ECF No. 13-10, PageID.957-59.), (ECF No. 13-12, PageID.1189, 1230.) Because Dr. Graves' opinion was contradicted by both his own treating records and the transcript as a whole, the ALJ did not err in discounting it. *See Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 390-392 (6th Cir. 2004)(While "[g]enerally, the opinions of treating physicians are given substantial, if not controlling, deference . . . . [their] opinions are only given such deference when supported by objective medical evidence.").

ALJ Herring also satisfied the articulation requirements of § 400.1527(c) by offering "good reasons" for discounting Dr. Graves' opinion. As a threshold matter, Plaintiff's claim that the ALJ did not acknowledge Dr. Graves' status as a treating source is contradicted by the ALJ's recognition that Dr. Graves treated Plaintiff prior to the 2012 alleged onset of disability date and discussion of the treating records from 2014 forward. (ECF No. 13-2, PageID.66-67,70.) The ALJ articulated the following "good reasons" for rejecting the treating opinion: (1) contrary to Dr. Graves' opinion, Dr. Henein's records did not show that Plaintiff met the diagnostic criteria for fibromyalgia, (2) Dr. Graves' own treating records did not support the degree of limitation reflected in his opinion, (3) the treating records by other providers did not support the opinion, and, (4) Dr. Graves did not provide an explanation for his otherwise unsupported findings. (ECF No. 13-2, PageID.70.)

*See Hill v Comm'r of Soc Sec*, 560 F. App'x 547, 549, 550 (6th Cir. March 27, 2014)(Citation to medical tests, claimant's admitted activities, and treating source's own records are "adequate reasons" for rejecting the treating opinion).  Further, while the ALJ rejected Dr. Graves' finding that Plaintiff was unable to perform even low stress jobs, she gave some credence to it by limiting Plaintiff to "simple and routine tasks with little contact with the public." (*Id.*, PageID.65, 70.)

For these reasons, the ALJ's accord of minimal weight to Dr. Graves' August 2018 opinion should be upheld.

### 2.  The Subjective Claims

Plaintiff argues that the rejection of her subjective claims of limitation, like the rejection of Dr. Graves' opinion, was "unsupported and not adequately explained . . .." (ECF No. 17, PageID.1322.)  In turn, the Commissioner disputes that the ALJ's findings were based on an erroneous interpretation of the record or that she failed to provide a thorough explanation for discounting Plaintiff's professed degree of restriction. (ECF No. 20, PageID.1360-61.)   The Commissioner notes that the evaluation of the subjective claims was supported by multiple citations to the record. (*Id.*)

SSR 16–3p sets forth the standard for evaluating a claimant's alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically determinable impairment

that could reasonably be expected to produce the alleged pain or limitation. *Id.* The ALJ acknowledged that Plaintiff experienced some degree of work-related limitation resulting from a "history" of fibromyalgia, degenerative disc disease, obesity, hip bursitis, asthma, anxiety, and PTSD. (ECF No. 13-2, PageID.61.) She also discussed Plaintiff's report of shoulder tenderness. (*Id.*, PageID.67.)

Plaintiff's argument relies on the second prong of SSR 16-3p, which requires evaluation of the claims of limitation not reflected by the objective evidence. 2016 WL 11190209 at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. [2]

The ALJ's conclusion that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

_____

[2] 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in addressing the second prong of SSR 16-3p: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

the medical evidence and other evidence in the record" is well supported and explained.  (ECF No. 13-2, PageID.65.)    Contrary to Plaintiff's claims that her allegations of fatigue, postural difficulties, medication side effects, and the need to elevate her legs were either ignored or improperly discounted (ECF No. 17, PageID.1321), the ALJ acknowledged Plaintiff's alleged difficulty "walking, sitting, standing, lifting, bending, kneeling, climbing stairs and using her hands[.]" (ECF No. 13-2, PageID.65-66.)

Having adequately considered Plaintiff's claims, the ALJ then provided a three-page discussion of the evidence standing at odds with the professed degree of limitation making the following observations:

- November 2012, x-rays and EMG studies were unremarkable with a normal physical examination and normal gait.  (ECF No. 13-2, PageID.66.)

- May 2013, Plaintiff reported no problems other than fibromyalgia pain, which was stable.  (*Id.*) *citing* (ECF No. 13-7, PageID.486-487.)

- May 2013, records showed no edema, joint swelling, shoulder abnormalities, depression or unusual anxiety. (*Id.*)

- August 2014, records showed that Plaintiff denied joint pain, swelling or weakness. (*Id.*, PageID.67.)

- July 2015, Plaintiff demonstrated normal strength in all extremities and declined an offer of physical therapy for muscle spasms because she was "going up north to Mackinaw in three days." (*Id.*)

- October 2015, Dr. Henein's found that Plaintiff was negative for fibromyalgia tender points. (*Id*., PageID.68.)

- June 2017 consultative records noted good interpersonal relationships and a report of a recent camping trip. (*Id.*)

The ALJ also observed that Plaintiff's activities included meal preparation, driving, camping, shopping, and attending doctors' appointments independently. (*Id*., PageID.64, 67-68.)  The ALJ permissibly concluded that the negative fibromyalgia findings, lack of edema, normal gait, good range of motion, good interactions with others, and the ability to take camping trips undermined Plaintiff's allegations of subjective limitation.  *See Heston v Commr of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001)(ALJ permissibly discounted "Heston's testimony concerning fatigue and shortness of breath in light of other evidence that Heston regularly walks around her yard for exercise, rides an exercise bicycle, goes to church, goes on vacation, cooks, vacuums, and makes beds.").

Because the rejection of Plaintiff's alleged degree of limitation is supported by the record and well explained, it is entitled to the deference generally accorded to an ALJ's evaluation of the subjective claims.  *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(An ALJ's assessment of claimant's allegations entitled to "great weight"); *see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.

1986))(ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'")

### 3. The RFC

Plaintiff also contends that the RFC is not supported by substantial evidence. (ECF No. 17, PageID.1315.)  She argues that the RFC for a limited range of light work did not account for her allegations of shoulder limitation or limitation in daily activities. (*Id*., PageID.1315-17.)  In turn, the Commissioner argues that the ALJ addressed the alleged shoulder limitations and Plaintiff's daily activities in providing a rationale for the RFC.  (ECF No. 20, PageID.1356-58.)

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [the] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945); § 404.1545.  In determining a claimant's RFC, it is necessary to consider: (1) objective medical evidence, as well as; (2) subjective evidence of pain or disability. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. § 404.1545(b-d).  "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Commissioner of Social Sec.*, 30 F. App'x. 542, 547–548, 2002 WL 343402, at *5 (6th Cir. March 4,

2002)(internal citations omitted).  "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."   It is well settled that an ALJ is permitted to draw from the record as a whole in crafting the RFC.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention that ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record.")

Plaintiff's claim that the ALJ neglected to consider her right shoulder problem is contradicted by the ALJ's acknowledgement that Plaintiff reported tenderness of the right shoulder but that the imaging and clinical studies were negative.  (ECF No. 13-2, PageID.67) *citing* (ECF No. 13-7, PageID.482.)  Plaintiff's claims that her daily activities were not "meaningfully discussed" by the ALJ (ECF No. 17, PageID.1317) stands at odds with ALJ's observation that Plaintiff could prepare meals, bake, decorate cookies, shop, drive, travel independently to doctors' appointments, knit, and take camping trips.  (ECF No. 13-2, PageID.64, 67-68.)  Again, Plaintiff's allegation that her activities were limited by her various conditions is permissibly undermined by the fact that she interrupted treatment when required to take a camping trip or help her daughter move to college.  While Plaintiff claims that the ALJ erroneously found that she had hiked for one hour prior to an ankle

injury, the ALJ merely cited a medical report stating that Plaintiff "fell while hiking in the woods" during a camping trip.[3]   (*Id.*, PageID.61, 70.) Although Plaintiff alleges that the ALJ did not acknowledge her manipulative limitations, aside from Dr. Graves' unelaborated finding of manipulative impairment, Plaintiff fails to cite any evidence showing that she experienced long-term manipulative limitations.

As discussed above, the evidence otherwise supports the RFC for a limited range of light work.  Despite Plaintiff's multiple diagnoses, the treating records generally show a normal appearance and no acute discomfort.  (ECF No. 13-7, PageID.471, 474, 480, 486, 502.)  The treating records, coupled with her ability to travel, drive, and perform a wide variety of household chores, adequately supports the ALJ's non-disability finding.

Because the ALJ's findings are supported by substantial evidence, the administrative determination should remain undisturbed.

### F.   Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown

---

[3] At the administrative hearing, the ALJ questioned Plaintiff about treatment records which seemingly stated that Plaintiff had walked an hour before experiencing an ankle injury, *see* (ECF No. 13-12, PageID.1177) but apparently accepted her testimony that she had not been walking for an hour prior to the fall. (ECF No. 13-2, PageID.93-94).

legal error that would upend the ALJ's decision and the Court's review of this opinion makes clear that it was based upon substantial evidence.

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 20), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

Dated:  August 4, 2021